**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **KIMBERLY DANWEBER** individually, and on behalf of others similarly situated, | : : : : | Case No: |
| Plaintiff, | : : | Hon. |
| v. | : : : | |
| **IMAGINE 360 SERVICES LLC**, | : : | |
| Defendant. | : : : : : | |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Kimberly Danweber ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Imagine 360 Services, LLC ("Defendant"), and states as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minium Wage Act ("PMWA"), 43 P.S. § 333.101 *et seq.*, the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1 *et seq.*, and common law.

2.     Defendant holds itself out to be "a new kind of health care partner."[1]

3.     According to its website, Defendant offers "a range of innovative health plan

---

[1] *See* https://www.imagine360.com/about/ (last visited Apr. 3, 2026).

1

solutions designed to give employers more control, more flexibility and better outcomes."[2]

4. In providing the aforementioned services, Defendant employed customer service representatives in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Member Solutions Navigator and Provider Services Professional to refer to its call center representative employees (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, handle incoming calls and/or tickets from members and providers by answering policy questions and concerns and entering data into Defendant's computer system.

5. Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

6. Defendant employed Plaintiff as an hourly call center employee with the job title of Member Services Navigator.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant' CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

---

[2] *See* https://www.imagine360.com/faq/ (last visited Apr. 3, 2026).
[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

10.    Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before their scheduled shifts, when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

11.    More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems and loading numerous applications and programs prior to clocking in to Defendant' timekeeping system.

12.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject workers to the same illegal conduct in the future.

13.    At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## **JURISDICTION AND VENUE**

14.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

17.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

18.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Pennsylvania, employs individuals within the state of Pennsylvania, and is registered with the Pennsylvania Department of State.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and a substantial portion of the events that give rise to Plaintiff's claims occurred in this district.

## PARTIES

20.      Plaintiff Kimberly Danweber is a resident of Gilbertsville, Pennsylvania and worked remotely for Defendant as an hourly, non-exempt CSR from approximately October 2025 through January 2026. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $25.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

21.     Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

4

22.     Defendant is a Delaware limited liability company with a principal place of business at 1550 Liberty Ridge Drive, Wayne, Pennsylvania 19087. It is registered with the Pennsylvania Department of State and has a registered agent for service of process listed as Corporation Service Company, 5235 North Front Street, Harrisburg, PA, 17110.

## GENERAL ALLEGATIONS

23.     Defendant paid its CSRs at varying hourly rates.

24.     Defendant's CSRs typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

25.     While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

26.     Prior to being hired, Defendant provided prospective CSRs with a written offer setting forth the CSR's terms of employment, the offered rate of pay, work schedule, and other information.

27.     Defendant maintains documents demonstrating the promised hourly wage for each CSR, including, but not limited to, offer letters, paystubs, and/or other payroll records.

28.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

29.     Plaintiff performed under the contract with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff worked with members of Defendant's insurance plans, providing them with information about their benefits and addressing member issues regarding their plan. The customer service was provided via inbound calls and tickets and

outbound calls, emails, and ticket responses, and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

30. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same.

31. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

32. In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

33. Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls and/or respond to tickets the moment their shift began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

34. Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready" status. Defendant enforced these policies and

procedures by routinely evaluating CSRs and enforcing its overtime policy that prohibited CSRs from working more than 40 hours in a work week without prior approval from their supervisor.

35.    All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

36.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-shift work off-the-clock.

37.    The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers, applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

38.    As a result of the pre-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately five to ten minutes of compensation every day.

39.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with its CSRs.

40.    Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

41.    Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42.    Defendant possesses, controls, and/or has access to information and electronic data

7

indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

43. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

44. Because Defendant required its CSRs, including Plaintiff, to perform pre-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

### A. Pre-Shift Off-the-Clock Work

45. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into multiple computer networks, software programs and applications. Defendant's CSRs only received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls and/or respond to tickets when their scheduled shifts began.

46. The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) to ten (10) minutes per shift. Before each shift, CSRs were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; connect to Defendant's virtual private network ("VPN") with a username and password and two factor authentication; and open various programs and applications that were integral and indispensable to their job duties as CSRs, including but not limited to, ISolved, BGAS,

8

Macess, Microsoft Outlook, Microsoft Teams, Freshdesk, Microsoft Word and/or Excel, Notepad, InContact Max, Ring Central, One Note, and Sticky Notes. CSRs then clock in and go into a "ready" status.

47.    Defendant's CSRs must complete this process before the start of their scheduled shift and before fielding calls and/or tickets. Consequently, the CSRs must arrive at work before their scheduled shift to complete their above-described start-up and log-in activities.

48.    Defendant' CSRs were not compensated for all of this time because Defendant prohibited CSRs from clocking into their timekeeping software before the start of their scheduled shift.

49.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

## B. **Plaintiff's Exemplary Workweek**

50.    Defendant paid its CSRs on a biweekly basis. The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), in the two workweeks of November 30, 2025-December 13, 2025, Plaintiff was paid for 81.5 hours of work. Thus, Plaintiff's pre-shift off-the-clock work as described above during these workweeks would necessarily be off-the-clock overtime work

## COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the prior three years.*

9

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

52.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

53.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

54.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

55.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

56.     Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

57.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

        a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

10

b. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

58. Defendant's unlawful conduct has been widespread, repeated, and consistent.

59. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

60. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without compensation; and 2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks and overtime for hours worked over forty (40) in a week.

61. Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

62. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be

unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 PENNSYLVANIA STATE LAW CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

*All current and former CSRs who work or have worked for Defendant in Pennsylvania at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff reserves the right to amend this definition if necessary.

64.    *Numerosity:* The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Pennsylvania Class members, each of whom should be easy to identify from Defendant's computer systems and personnel and payroll records.

65.    *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Pennsylvania Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant maintained a common policy or practice requiring CSRs to perform off-the-clock work before and/or during their scheduled shifts;

   b. Whether Defendant violated Pennsylvania state law by failing to pay CSRs for all hours worked;

   c. Whether Defendant violated Pennsylvania state law by failing to make, keep, and preserve true and accurate payroll records; and

   d. The proper measure of damages sustained by the Rule 23 Pennsylvania Class.

66.    *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Pennsylvania Class members in that Plaintiff and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

67.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

68.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Pennsylvania Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Pennsylvania Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

69.    The case will be manageable as a class action. Plaintiff and her counsel know of no

unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

70.     Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

71.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant*
> *at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

73.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

74.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions

14

affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

75. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

76. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

78. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

relative ease.

79.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

80.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

81.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

82.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

83.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

84.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

85.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

86.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

87.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

88.     The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

89.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

90.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

91.     The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was not significant.

92.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207.

93.     As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the

17

FLSA.

94.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

95.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 PENNSYLVANIA CLASS ACTION**
**VIOLATIONS OF THE PENNSLYVANIA MINIMUM WAGE ACT, 43 P.S. §§ 333.101,**
***et seq.* AND PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. §§**
**260.1, *et seq.* ("PENNSYLVANIA WAGE ACTS")**

96.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

97.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Pennsylvania Wage Acts, and Plaintiff and the Rule 23 Pennsylvania Class were employees entitled to the Pennsylvania Wage Acts' protections. *See* 43 P.S. § 333.103(f)-(g); 43 P.S. § 260.2a.

98.    The Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* entitles employees to compensation for every hour worked in a workweek. *See* 43 P.S. § 333.103.

99.    The PMWA requires employers to pay their employees minimum wages, *see* 43 P.S. § 333.104(a)-(a.1), and time-and-a-half their regular rate of pay of hours worked in excess of 40 per week, *see* 43 P.S. § 333.104(c).

100.    The PMWA defines wages as "compensation due to any employe by reason of his or her employment." *See* 43 P.S. § 333.103(d).

101. The Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.* requires that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

102. As discussed herein, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Pennsylvania Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Pennsylvania Class members performed on Defendant's behalf.

103. For example, Defendant offered to compensate Plaintiff at a minimum of $25.00, plus any overtime pay required by applicable law, if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed under her contract by fulfilling her duties as a CSR, which included, but was not limited to, the pre-shift and meal-period work activities required of her, in reliance on the offer.

104. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, including the unpaid pre-shift and meal-period work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Pennsylvania Class the promised wages for all work.

105. Upon information and belief, each Rule 23 Pennsylvania Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period, in addition to applicable overtime premiums.

19

106. Plaintiff and every other Rule 23 Pennsylvania Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift and meal-period work described herein.

107. Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Pennsylvania Class for all wages (regular and overtime) owed.

108. 43 P.S. § 333.113 provides that an employee who is not paid in accordance with the PMWA may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees. *See* 43 P.S. § 333.113.

109. Under 43 P.S. § 260.9a, an employee aggrieved by an employer's violation of the PWPCL may bring a civil action to recover all unpaid amounts, plus liquidated damages equal to twenty-five (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater, costs and reasonable attorneys' fees. *See* 43 P.S. § 260.9a(b), (f); *see also* 43 P.S. § 260.10.

110. Defendant violated the Pennsylvania Wage Acts by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the work activities described in this Complaint.

111. Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

112. As a result, Plaintiff and the Rule 23 Pennsylvania Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Pennsylvania Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Pennsylvania Wage Acts at an amount to be proven at trial.

20

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

113. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

114. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

115. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

116. For example, Defendant offered to compensate Plaintiff at a minimum of $15.50 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

117. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked, including non-overtime hours.

118. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $25.00 per hour within the applicable period.

119. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the

contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

120.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

121.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

122.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

123.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

124.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

125.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

22

126. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

127. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

128. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

129. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

130. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

131. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

132. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

133. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

134.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

135.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c.    An Order certifying this action as a class action (for the Rule 23 Pennsylvania Class) pursuant to Fed. R. Civ. P. 23(b)(3) with respect to Plaintiff's state law claims (Count II);

d.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

e.    An Order designating Plaintiff to act as the representative of the FLSA Collective, the Rule Pennsylvania Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f.    An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

g.    An Order declaring that Defendant's violations of the FLSA were willful;

h.    An Order declaring that Defendant violated Pennsylvania state law and its attendant regulations as set forth above;

24

i.      An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Pennsylvania Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      An Order awarding such further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand a trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: May 28, 2026                                    Respectfully Submitted,

*/s/ Adam S. Levy*
Adam S. Levy (PA Attorney ID 66866)
**LAW OFFICE OF ADAM S. LEVY, LLC**
P.O. Box 88
Oreland, PA 19075
(267) 994-6952
adamslevy@comcast.net

25

Jason J. Thompson (P47184)*
Jacob R. Rusch (MN Bar No. 0391892)*
**SOMMER SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
jrusch@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

*\*Pro Hac Vice Application Forthcoming*

# Exhibit A

## CONSENT TO JOIN

1.  Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.  I worked for Defendant(s) as an hourly employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

3.  I hereby designate the Sommers Schwartz, P.C. law firm to represent me in this lawsuit.

Signature: *Kimberly Danweber*

Print Name: Kimberly Danweber

Date Signed: 03/18/2026

8